IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON COLLURA,<br>                Plaintiff,<br><br>        v.<br><br>P/O CEDRIC WHITE, P/O JOSEPH<br>CORVI, and P/O DANIEL DAVIS,<br>                Defendants. | CIVIL ACTION<br><br><br><br>NO. 12-4398 |

DuBois, J.                                                                               November 14, 2013

**M E M O R A N D U M**

### I. INTRODUCTION

This case arises out of the arrest of *pro se* plaintiff Jason Collura on July 22, 2010. Presently before the Court is plaintiff's Motion for Postponement of Non Jurisdictional Hearing (Document No. 79, filed September 24, 2013). With respect to that Motion, after receiving defendants' response to the motion and plaintiff's reply, the Court, by Order dated October 16, 2013, directed *pro se* plaintiff to submit medical documentation in support of his contention that he was medically unable to appear for the September 24, 2013 hearing, which he failed to do. For the reasons that follow, the Court denies plaintiff's Motion and *sua sponte* dismisses with prejudice plaintiff's Second Amended Complaint pursuant to the Court's inherent power to dismiss actions for lack of prosecution and Federal Rule of Civil Procedure 41(b).

### II. BACKGROUND

In July 2012, plaintiff filed a Complaint in the Philadelphia Court of Common Pleas, asserting both federal and state claims against defendants City of Philadelphia; Police Officers Cedric White, Joseph Corvi, and Daniel Davis; Sergeant Maria Ortiz-Rodriguez; and Allied

Barton Securities Services, LLC (Allied Barton). After removal of the case to this Court,[1] defendants moved to dismiss plaintiff's Complaint, under Federal Rule of Civil Procedure 12(b)(6), and to strike impertinent and scandalous allegations in plaintiff's Complaint, under Federal Rule of Civil Procedure 12(f). In doing so, defendants pointed to "numerous disparaging and threatening statements" in plaintiff's Complaint, including references to defendants as "scumbag[s]," "creep[s]," "coward[s]," "filthy," and "scum." Defs.' Mot. to Dismiss & to Strike Impertinent and Scandalous Allegations at 22 (Document No. 16, filed August 24, 2012).

By Memorandum and Order dated December 20, 2012, the Court dismissed a number of plaintiff's claims under Rule 12(b)(6). Noting that plaintiff's "entirely inappropriate language and ad hominem attacks . . . . serve[] only to disparage the defendants and to detract from the dignity of the Court," the Court also dismissed the remainder of plaintiff's Complaint without prejudice to plaintiff's right to file an amended complaint within thirty days.

Plaintiff responded to the Memorandum and Order with four submissions. First, plaintiff filed a Motion for Reconsideration (Document No. 28, filed December 28, 2012), which included a request to file an interlocutory appeal. Second, plaintiff filed a Notice to Stand on Complaint, in which he "announc[ed] [his] intention to stand on his complaint and disavow[ed] any intention to reinstitute the litigation." Pl.'s Notice to Stand on Compl. at 1 (Document No. 31, January 17, 2013). Third, plaintiff filed a Motion to Stay Proceedings on the ground that "[a]n appeal has been taken in this matter to correct all of discretion [sic] this court abused." Mot. to Stay Proceedings at 1 (Document No. 32, filed January 17, 2013). Fourth, plaintiff filed a Motion for Recusal (Document No. 33, filed January 17, 2013), in which he alleged that the Court's Memorandum and Order dated December 20, 2012 were products of judicial bias.

---

[1] On August 13, 2013, plaintiff moved to remand the case to state court. The Court denied that Motion by Order dated August 17, 2013.

Notwithstanding his Notice to Stand on Complaint, plaintiff filed a First Amended Complaint on January 18, 2013. In plaintiff's First Amended Complaint, plaintiff replaced most of the offensive language in the initial Complaint with the words "what Plaintiff said before." 1st Am. Compl. ¶¶ 7-17, 19-23, 29, 31 (Document No. 36, filed January 18, 2013). Directly after filing his First Amended Complaint, plaintiff filed a Motion to Stay Amended Complaint (Document No. 37, filed January 18, 2013). On February 1, 2013, the City Defendants[2] filed an Answer to Plaintiff's First Amended Complaint with Affirmative Defenses (Document No. 42, filed February 1, 2013), and all defendants moved to dismiss plaintiff's First Amended Complaint. On February 20, 2013, plaintiff filed a Motion to Strike Affirmative Defenses in Defendant City of Philadelphia's Answer (Document No. 46, filed February 20, 2013).

The Court, by Memorandum and Order dated March 1, 2013, dismissed all claims in the First Amended Complaint without prejudice to plaintiff's right to file a second amended complaint, citing the fact that plaintiff's First Amended Complaint was largely unchanged in any material way from plaintiff's initial Complaint and consisted of a tirade and threats against defendants. The Court also, *inter alia*, denied plaintiff's Motion for Reconsideration; denied plaintiff's request for permission to file an interlocutory appeal; and denied as moot defendants' motions to dismiss, Plaintiff's Motion to Stay Amended Complaint, plaintiff's Motion to Stay Proceedings, and Plaintiff's Motion to Strike Affirmative Defenses in Defendant City of Philadelphia's Answer. By a separate Order dated March 1, 2013, the Court also denied plaintiff's Motion for Recusal.

---

[2] "City Defendants" collectively refers to defendants City of Philadelphia, police Officers Cedric White, Joseph Corvi, and Daniel Davis, Sergeant Maria Ortiz-Rodriguez, and Inspector Jerrold Bates, in their individual capacities.

On March 28, 2013, plaintiff filed a Second Amended Complaint, in which he alleged violations of the Pennsylvania Constitution and state-law claims of false arrest, illegal imprisonment, and intentional infliction of emotional distress. Contemporaneously, plaintiff filed a Motion to Remand to Court of Common Pleas (Document No. 54, filed March 28, 2013). On April 4, 2013, plaintiff filed a Response to Memorandum and Order, calling the Court's prior opinions "joke[s]," "disgrace[s]," and "favor[s]." Resp. to Mem. & Order at 2 (Document No. 55, filed April 4, 2013). Plaintiff stated that he would not appear for hearings in front of the Court and if the Court failed to remand the case, "[p]laintiff w[ould] have to put it in civil suspense." *Id.* at 3. Before the Court could rule on plaintiff's March 28, 2013 Motion to Remand to Court of Common Pleas, plaintiff filed another Motion to Decline Supplemental Jurisdiction, in which plaintiff called defendants "manipulators" and defense counsel "an excuse of an attorney." *See* Mot. to Decline Supp. Jurisdictionand [sic] Remand Under 28 U.S.C [sic] 1367 (c)/and [sic] Reply to Br. in Opp. to Remand at 11, 13 (Document No. 59, filed April 16, 2013) [hereinafter Mot. to Decline Supplemental Jurisdiction]. On April 18, 2013, defendants moved to dismiss plaintiff's Second Amended Complaint.

By Memorandum and Order dated July 31, 2013, the court issued four rulings: (1) the Court denied Plaintiff's Motion to Remand to Court of Common Pleas; (2) the Court denied Plaintiff's Motion to Decline Supplemental Jurisdiction; (3) the Court dismissed with prejudice all claims against Allied Barton, Rosiello, and Kowalksi; and (4) the Court dismissed all claims with prejudice against the City Defendants, except for the false-arrest and false-imprisonment claims asserted against Police Officers Cedric White, Joseph Corvi, and Daniel Davis. Although the Court did not dismiss plaintiff's Second Amended Complaint in its entirety, it warned that continued *ad hominem* attacks on the Court or the parties appearing before it would result in

4

sanctions, including dismissal of the case with prejudice. Finally, the Court ordered that plaintiff and counsel for the remaining defendants "meet and confer and provide the Court with a Case Management Order pursuant to Federal Rule of Civil Procedure 26(f) on or before August 30, 2013." The Court admonished that "[f]ailure to comply with this directive will result in consideration by the Court of the imposition of appropriate sanctions . . . , including dismissal of the case with prejudice."

Pursuant to this Order, defense counsel sent plaintiff correspondence on August 2, 9, and 26, 2013 "to schedule a telephonic Rule 26(f) conference at a mutually convenient time." Letter from Oleg V. Nudelman (Document No. 70, filed August 30, 2013). Plaintiff did not respond. *Id.* Rather, on August 28, 2013, plaintiff filed a Notice of Appeal of this Court's July 31, 2013 Order.[3] *Id.* Later that day, plaintiff sent defense counsel an email enclosing his Notice of Appeal. *Id.* In his cover email, plaintiff wrote, "As you know this stops everything. . . . As you also know there will be no discovery on this claim . . . ." *Id.*

In response to plaintiff's email, defense counsel wrote a letter to the Court, dated August 30, 2013, enclosing the parties' correspondence and advising the Court of defense counsel's unsuccessful efforts to meet and confer with plaintiff. The Court thereafter scheduled a hearing on September 24, 2013 and directed plaintiff to appear and show cause why appropriate sanctions, including dismissal of the action with prejudice, should not be imposed by reason of plaintiff's failure to comply with the Court's Order dated July 31, 2013. Plaintiff thereafter filed a Motion to Stay Non Jurisdictional Proceedings (Document No. 73, filed September 11, 2013), which the Court denied by Order dated September 18, 2013.

---

[3] By Order dated November 5, 2013, the U.S. Court of Appeals for the Third Circuit dismissed plaintiff's improper interlocutory appeal for lack of jurisdiction.

Plaintiff failed to appear for the September 24, 2013 hearing. Instead, approximately one half hour before the hearing was to commence, plaintiff filed three motions: (1) Plaintiff's Renewed Motion for Summary Judgment (Document No. 77, filed September 24, 2013), (2) Renewed Motion to Stay (Document No. 78, filed September 24, 2013), and (3) Motion for Postponement of Non Jurisdictional Hearing. In plaintiff's Motion for Postponement of Non Jurisdictional Hearing, he wrote:

> First, the hearing is void on its face . . . , but second, nothing can be accomplished by a hearing in such circumstances. Also, Plaintiff has developed a flesh eating disease that is highly contagious to anyone within 35 feet, like a courtroom. It is expected to last 3-6 months, so the bogus purported September 24th hearing should be postponed indefinitely.

Mot. for Postponement of Non Jurisdictional Hr'g at 1.

After receiving defendants' response to the three motions filed on September 24, 2013 and plaintiff's reply, the Court, by Order dated October 16, 2013, denied Plaintiff's Renewed Motion for Summary Judgment and plaintiff's Renewed Motion to Stay, but deferred ruling on plaintiff's Motion for Postponement of Non Jurisdictional Hearing. The Court ordered plaintiff to file under seal on or before November 5, 2013, a medical report signed by a licensed physician or duly authorized employee of an accredited hospital in support of his contention that he was unable to appear for the medical reasons stated in his Motion for Postponement. Further, the Court warned, "Failure to provide the required medical report on or before November 5, 2013 will result in disposition of the case based on the state of the record as of November 5, 2013."

On October 31, 2013, plaintiff filed three additional motions: (1) a motion for reconsideration of, *inter alia*, the Court's directive that plaintiff file such medical documentation; (2) a second motion for recusal; and (3) yet another motion demanding that the Court decline to exercise supplemental jurisdiction and remand the case to the Court of Common Pleas. By

orders dated November 4, 2013, the Court denied all three motions. The only motion presently before the Court is plaintiff's Motion for Postponement of Non Jurisdictional Hearing.

### III. PLAINTIFF'S MOTION FOR POSTPONEMENT

The Court first considers plaintiff's Motion for Postponement of the September 24, 2013 hearing. In their Response in Opposition, defendants argue that plaintiff's excuse that he contracted a "highly contagious . . . flesh-eating disease" is not credible in light of (1) plaintiff's history of "obfuscat[ing] and delay[ing] proceedings by continuously filing and re-filing frivolous motions and appeals" and (2) plaintiff's failure to "furnish[] the Court with any proof of his actual unavailability for medical reasons." Defs.' Resp. in Opp. to Pl.'s Renewed Mot. for Summ. J., Renewed Mot. to Stay, and Mot. for Postponement of Show Cause Hr'g at 9-10 (Document No. 82, filed October 1, 2013).

The Court agrees with defendants' assessment that plaintiff's medical excuse is merely a ruse to postpone the proceedings further,[4] particularly in light of plaintiff's failure to comply with the Court's Order to produce medical documentation. The only responses that the Court has received on this issue are plaintiff's statements that the Court "will get no note" because "this is not grade school." Pl.'s Mot. for Reconsideration at 1 (Document No. 91, filed October 31, 2013); *see also* Pl.'s Reply in Opp. to Def.'s [sic] Resp. to Summ. J., Stay, and Postpone at 5 (Document No. 86, filed October 15, 2013) ("Plaintiff was not required to file a 'doctor's note' as alleged, this is not grade school and should not have to produce one in the future.").

---

[4] Plaintiff's claim that a health condition prevented him from appearing for the September 24, 2013 hearing is particularly devoid of credibility considering that prior to the hearing, plaintiff filed in the U.S. Court of Appeals for the Third Circuit two "emergency" motions seeking a stay of the September 24, 2013 hearing, neither of which stated that plaintiff had a health condition that would prevent plaintiff from appearing. Both of these motions were denied in advance of the September 24, 2013 hearing.

A litigant may be required to provide medical verification that he or she is unable to comply with a court's order because of illness. *See, e.g.*, *Grogan v. Deb Shops, Inc.*, No. 93-cv-3255, 1993 WL 465382, at *2 (E.D. Pa. Nov. 12, 1993) (granting a plaintiff "thirty (30) days leave to supply sufficient medical evidence under oath justifying his failure to attend [court-ordered] hearings," after plaintiff "ha[d] simply made a conclusory statement concerning his illness with no medical verification"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) ("While Emerson appears to argue that the District Court did not consider his medical problems [before it dismissed his case], the record reflects the contrary. . . . When Emerson sought additional stays [citing health reasons], the District Court afforded Emerson the opportunity to submit medical documentation supporting that he was unable to proceed for medical reasons.").

Given plaintiff's failure to provide documentation in support of his alleged illness, the Court must disregard plaintiff's assertion that he was unable to appear for the September 24, 2013 hearing because he has contracted a "highly contagious . . . flesh-eating disease." *See, e.g.*, *Parker v. Pennstar Bank, NBT*, 436 Fed. App'x 124, 127 (3d Cir. 2011) (finding that where a litigant has provided "excuse after excuse" for "flout[ing] . . . [a] judge's orders," the litigant is no longer credible); *In re Fechnay*, Bankr. No. 07-14418, 2008 WL 4900136, at *4 (E.D. Pa. Nov. 12, 2008) (finding that without the "submi[ssion] [of] an affidavit setting forth the relevant facts," the court must "disregard [an] unsupported assertion of mental and/or emotional problems" as a reason for the litigant's "disengagement in th[e litigation] process"). Although plaintiff may disagree with the Court's Order that he provide medical documentation in support of his purported medical condition, or even believe the Order to be incorrect, such opinion or belief does not excuse noncompliance. *See United States v. Stine*, 646 F.2d 839, 845 (3d Cir. 1981) ("If a person to whom a judge directs an order believes that order is incorrect the remedy

is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").[5]
Because the Court denies plaintiff's Motion for Postponement of Non Jurisdictional Hearing, it will proceed to determine whether dismissal of plaintiff's case is warranted on the present state of the record.

### IV. PLAINTIFF'S CONDUCT WARRANTS DISMISSAL

The Court finds plaintiff's conduct in prosecuting his case warrants dismissal. "A District Court has the authority to dismiss a suit sua sponte for failure to prosecute by virtue of its inherent powers and pursuant to Federal Rule of Civil Procedure 41(b)." *Iseley v. Bitner*, 216 F. App'x 252, 254-55 (3d Cir. 2007) (per curiam) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). The power to dismiss a case "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link*, 370 U.S. at 629-30. Because dismissal is a harsh sanction, the court must consider "whether lesser sanctions would better serve the interests of justice." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982). The sanction of dismissal should only be used where plaintiff exhibits "a clear record of delay or contumacious conduct." *Id.*

In determining whether to dismiss a case for failure to prosecute, a district court must consider: "(1) the extent of the *party*'s *personal responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5)

---

[5] Although plaintiff has not suggested that filing his Motion for Reconsideration in any way relieves him of his obligation to comply with the Court's Order dated October 16, 2013, the Court notes that "[m]erely filing a motion for reconsideration does not stay an impeding [sic] deadline." *In re Republic of Ecuador*, Nos. C-10-80225 MISC CRB et al., 2011 WL 736868, at *4 (N.D. Cal. Feb. 22, 2011); *see also, e.g.*, *New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, No. 99-cv-2436, 2000 WL 377513 (S.D.N.Y. Apr. 12, 2000); *United States v. Ottman*, No. 05-cr-10, 2008 WL 4371975, at *1 (M.D. Ga. Sept. 22, 2008); *Burgess v. Williams*, No. 11-cv-316, 2012 WL 1268608, at *2 n.1 (N.D.N.C. April 16, 2012).

the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). The Court will address each factor in turn.

**1. The Extent of Plaintiff's Personal Responsibility**

First, the Court must consider the extent of plaintiff's personal responsibility for the behavior at issue. Because plaintiff is proceeding *pro se*, he is fully responsible for his misconduct. *See Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008) ("As a legal proposition, . . . a pro se plaintiff is responsible for his failure to attend a pretrial conference or otherwise comply with a court's orders."). Thus, the first *Poulis* factor weighs in favor of dismissal.

**2. Prejudice to the Adversary**

The second *Poulis* factor concerns "the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery." *Poulis*, 747 F.3d at 868. "[P]rejudice is not limited to 'irremediable' or 'irreparable' harm" and "includes 'the burden imposed by impeding a party's ability to prepare effectively and a full and complete trial strategy.'" *Briscoe*, 538 F.3d at 259 (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). "If there has been true prejudice to a party by its adversary's failure to file a timely or adequate pleading, discovery response, or pretrial statement, that factor . . . bear[s] substantial weight in support of a dismissal or default judgment." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).

In this case, plaintiff's conduct clearly has prejudiced defendants. As a direct result of plaintiff's behavior, defendants have incurred legal fees in seeking plaintiff's cooperation and compliance with court orders, responding to defendant's frivolous motions and appeals, and preparing for and attending the court-ordered hearing on September 24, 2013. In addition to

10

such costs, defendants have been prejudiced by the delay plaintiff's actions have caused in the case. Plaintiff filed his initial Complaint in July 2012, and now, over one year later, the parties have yet to conduct any discovery. Further, because plaintiff has refused to comply with numerous court orders, including the Order that he meet and confer with defendants, defendants are unable to identify witnesses or otherwise defend themselves in this action. *See Pik v. University of Pa.*, No. 08-cv-5164, 2011 WL 3273068, at *5 (E.D. Pa. Aug. 1, 2011). The Court finds that plaintiff's dilatoriness has prejudiced defendants, and therefore the second *Poulis* factor weighs in favor of dismissal.

### 3. A History of Dilatoriness

Next, the Court considers whether plaintiff has engaged in "extensive or repeated delay or delinquency constitut[ing] a history of dilatoriness." *Briscoe*, 538 F.3d at 260 (quoting *Adams v. Trustees of N.J. Brewery Empls.' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994)).

Plaintiff's long history of dilatoriness, dating back to the initial stages of this case, is detailed earlier in this Memorandum and need not be repeated in full. Plaintiff has attempted to derail every stage of this litigation. Rather than focusing on the merits of his case, plaintiff continues to file motion after motion contesting this Court's jurisdiction, seeking recusal, demanding remand to state court, and attempting to postpone and/or stay court proceedings, despite that this Court and the U.S. Court of Appeals for the Third Circuit consistently have denied his duplicative requests. *Stezzi v. Citizens Bank of Pa.*, No. 10-cv-4333, 2013 WL 1234178, at *4 (E.D. Pa. March 27, 2013) (holding there is a history of dilatoriness warranting dismissal where a plaintiff "seeks[] to avoid compliance with her obligations to cooperate with discovery," while "fil[ing] a number of motions directed at issues that do not bear upon the merits of her claims, thus repeatedly delaying resolution of her claims on their merits").

11

Plaintiff's demand that this Court "indefinitely" postpone the September 24, 2013 hearing is only his latest attempt to prevent resolution of the case. Because it could not be more evident that "this action is manifestly not a situation in which 'there was only one failure to comply in a timely manner,'" the third *Poulis* factor weighs in favor of dismissal. *Francis v. Joint Force Headquarters Nat'l Guard*, No. 05-4882, 2009 WL 777396, at *8 (D.N.J. March 19, 2009) (quoting *Poulis*, 747 F.3d at 868), *aff'd*, 350 F. App'x 608 (3d Cir. 2009).

### 4. Whether Plaintiff's Conduct Was Willful or in Bad Faith

The fourth factor that a district court "must consider [is] whether the conduct was 'the type of willful or contumacious behavior which [is] characterized as flagrant bad faith.'" *Briscoe*, 538 F.3d at 262 (quoting *Adams*, 29 F.3d at 875). "Generally 'willfulness involves intentional or self-serving behavior.'" *Id.* (quoting *Adams*, 29 F.3d at 875). This factor is met where "plaintiff has engaged in a litany of bad faith attacks on the Court," such as where he or she repeatedly has made unfounded allegations of bias and prejudice. *Muhammad v. Ct. of Common Pleas of Allegheny Cnty., Pa.*, No. 09-cv-1255, 2013 WL 966625, at *8 (W.D. Pa. Feb. 20, 2013), *report and recommendation adopted by* No. 09-cv-1255, 2013 WL 966115 (W.D. Pa. March 12, 2013), *aff'd*, No. 13-cv-2009, 2013 WL 4400877 (3d Cir. Aug. 16, 2013).

Plaintiff's failure to comply with the Court's orders cannot be viewed as "accidental or inadvertent but instead reflect[s] an intentional disregard for [plaintiff's] case and the Court's instructions." *Stezzi*, 2013 WL 1234178, at *4. Plaintiff has made it clear that he has received and understands all of the Court's orders, but will not comply with any directive with which he disagrees. *See, e.g.*, Renewed Mot. to Stay at 1-2 ("The purported discovery order was void . . . . and no Rule 16 hearings or any type, no discovery, no connected bogus hearings due to discovery . . . can take place."); Pl.'s Mot. for Reconsideration at 1 ("This is . . . my case and

12

you won't be deciding it because I said so. No purported discovery order was legally valid to begin with . . . ."). Although plaintiff states that he has a "duty to disobey" what he perceives to be "unlawful order[s]," Mot. to Decline Supplemental Jurisdiction at 12, that does not excuse his behavior or "render h[is] recalcitrance any less willful." *Francis*, 2009 WL 777396, at *8 ("That Plaintiff's refusal to comply with the Court's orders is rooted in her convictions concerning the scope of the Court's authority or her opinions regarding the Court's legal decisions does not render her recalcitrance any less willful.").

Finally, in finding that plaintiff has acted both willfully and in bad faith, the Court also considers plaintiff's record of *ad hominem* attacks upon defendants and the Court. Plaintiff has called defendants and their counsel "slime," "creeps," "total, total scum of the earth," "trash," "weasel[s]," "monster[s]," and "worthless incompetent wannabe sharks." *See, e.g.*, Resp. to Mem. & Order at 4; Reply of Pl. to Answer of City of Philadelphia, et al. at 1, 4, 5 (Document No. 20, filed September 12, 2012); Br. of Pl. in Opp. to City of Philadelphia's Mot. to Dismiss 2d Amendment [sic] Compl. at 2 (Document No. 64, filed April 29, 2013). Further, plaintiff has referred to defendants' filings as "worthless" and "garbage." *See* Reply of Pl. in Opp. to Mot. to Dismiss of City of Philadelphia, et al. at 2, 8 (Document No. 45, filed February 20, 2013). Equally inexcusable are plaintiff's comments directed at the Court in nearly every one of his filings, including his unsupported allegations of judicial bias.

In light of plaintiff's egregious and inexcusable conduct, the Court finds there is ample evidence to conclude that plaintiff has acted willfully and in bad faith.

### 5. The Effectiveness of Sanctions Other Than Dismissal

The fifth *Poulis* factor is the effectiveness of sanctions other than dismissal. First, the Court notes that "where a plaintiff is proceeding pro se, . . . monetary sanctions, including

13

attorney's fees '[are] not . . . an effective alternative'" to dismissal because the litigant "ha[s] no attorney upon whom the District Court [may] impose the expenses for failing to comply with the court's orders." *Briscoe*, 538 F.3d at 263 (quoting *Emerson*, 296 F.3d at 191).

Putting plaintiff's *pro se* status aside, however, plaintiff has made it abundantly clear that nothing short of dismissal will deter his continued misconduct. For example, plaintiff responded to the Court's warning that the abusive language in plaintiff's initial Complaint was sanctionable misconduct by stating,

> [S]omehow the retards can't figure out that Plaintiff absolutely won't be complying with any invalid and bogus order . . . Plaintiff is standing on his complaint. Also Plaintiff cannot cure the defect in his complaint because there is none, just simple and reasonable adjectives that the offenders merely disagree with.

Pl.'s Reply in Opp. to City's Br. in Opp. to Pl.'s Mot. for Reconsideration at 5 (Document No. 34, filed January 17, 2013). Similarly, plaintiff has not complied with the Court's denial of his request for interlocutory appeals. Plaintiff has written that adverse decisions "[are] appealable and . . . will be appealed whether anyone likes it or not. . . . Plaintiff is going to appeal every adverse decision in this case and could care less if this drags on for eight years . . . ." Pl.'s Reply in Opp. to Allied Barton's Br. in Opp. to Pl.'s Mot. for Reconsideration at 1 (Document No. 38, January 24, 2013).

Moreover, even if the Court were to sanction plaintiff in lieu of dismissal, the Court has no reason to expect plaintiff's compliance with any such sanction. Not only has plaintiff stated on a multitude of occasions that this Court "has no authority to do anything" and is incapable of issuing "valid commands to adhere to," but plaintiff has dramatically confirmed his refusal to comply with any sanctions, even dismissal, by his statement that "no sanctions or dismissal with prejudice [can] occur[] for any reason whatsoever." Br. of Pl. in Opp. to City of Philadelphia's

Mot. to Dismiss 2d Amendment Compl. at 1-5.  When the Court warned plaintiff that he would face sanctions for continued misconduct, plaintiff responded that the Court "ha[s] **no base jurisdiction period,** let along the nerve to start ordering hearings and orders, [and] threatening sanctions."  Mot. to Stay Non Jurisdictional Proceedings at 2 (emphasis in original).  Where a *pro se* plaintiff has not heeded warning after warning, the Court has no choice but to dismiss his or her case.  *See, e.g.*, *Muhammad*, 2013 WL 966625, at *8 (finding that alternative sanctions would be in vain where plaintiff "repeatedly ignored court orders, including orders notifying [him] that failure to abide by the Order may result in the sanction of dismissing his case").  Thus, the fifth *Poulis* factor also militates in favor of dismissal.

   **6. The Meritoriousness of the Claims**

The final factor to consider is the "meritoriousness" of plaintiff's claims and defenses, which the Court must evaluate "on the basis of the facial validity of the pleadings, and not on summary judgment standards."  *Scarborough v. Eubanks*, 747 F.2d at 875.  In this case, the Court already has determined that plaintiff has alleged sufficient facts to support his false-arrest and illegal-imprisonment claims asserted against Police Officers Cedric White, Joseph Corvi, and Daniel Davis.  This factor therefore weighs in plaintiff's favor.  The Court finds, however, that this single factor does not overcome the cumulative effect of the other five factors, all of which weigh heavily in favor of dismissal.  *See, e.g.*, *Muhammad*, 2013 WL 966625, at *8.

**V. CONCLUSION**

The Court has weighed the above factors "in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited."  *Poulis*, 747 F.2d at 870.  This analysis leaves unescapable the Court's conclusion that plaintiff's clear record

15

of willful noncompliance with court orders warrants dismissal of plaintiff's Second Amended Complaint with prejudice. An appropriate order follows.